UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| VALLEY VIEW FARMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:22-cv-83 |
| ) | |
| BOS DAIRY LLC and ) | |
| HERREMA DAIRY LLC, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

This matter is before the court on the Motion for Summary Judgment filed by the defendants, Bos Dairy LLC and Herrema Dairy LLC, on December 13, 2023. [DE 39]. For the following reasons, the defendants' motion is **DENIED**.

*Background*

This is a case about silage—or, more precisely, excess silage, since the parties' chief dispute concerns whether the plaintiff can show that any excess silage, beyond the amounts the defendants claim, ever existed. The plaintiff, Valley View Farms, initiated this case on October 21, 2022, against the defendants, Bos Dairy LLC and Herrema Dairy LLC, alleging breach of contract, unjust enrichment, and conversion, respecting two corn silage contracts. [DE 1].

On December 13, 2023, the defendants filed the instant Motion for Summary Judgment. [DE 39]. The plaintiff responded on January 31, 2023. [DE 41]. The defendants did not file a reply and the time to do so has passed.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment. As a result, this court has jurisdiction to decide this case pursuant to **28 U.S.C. § 636(c)**. [DE 15].

*Undisputed Material Facts*

Unless otherwise indicated, the following material facts are not in dispute. On January 14, 2022, the plaintiff, Valley View Farms (VVF), entered into two nearly identical contracts, one with defendant Bos Dairy LLC (Bos), and the other with defendant Herrema Dairy LLC (Herrema). [DE 39-1 at 5, ¶ 1]; (Pl.'s Compl., Ex. B and C). In each contract, VVF agreed to plant specific portions of its farm land with corn—VVF would plant 250 acres of its land for Bos, and 460 acres of its land for Herrema [DE 39-1 at 5, ¶¶ 2-4]; (Pl.'s Compl., Ex. B and C). Bos and Herrema, in exchange, agreed to harvest and buy this corn as silage, a type of cattle feed made by collecting and fermenting whole corn stalks. *Id.* Bos and Herrema specifically agreed to harvest all of the corn grown on their portions of VVF's land, to weigh this corn, assess its water content, and then buy the resulting silage crop from VVF at a price based on its measured weight and water content. *Id.*

The parties agree that VVF, as promised, planted the corn before June 1, 2022. *Id.* The parties also agree that Bos and Herrema harvested all of the corn on their portions of VVF's land over several days starting on September 12, 2022. [DE 39-1 at 5, ¶ 8]; (Craig Dep., p. 17, 10-12). The parties disagree, though, about the amount of corn which Bos and Herrema collected during this harvesting process. [DE 41 at 4-6, ¶ 6-7].

Bos and Herrema maintain that their reported yields accurately account for all of the corn which they harvested. [DE 39-1 at 5, ¶ 6-7]. Bos reported its yield as about 18.3 adjusted tons of silage per acre, or 4,610 adjusted tons of silage total, and Herrema reported its yield as about 16.7 adjusted tons of silage per acre, or 7,712 adjusted tons of silage total. *Id.* These reported yields are not in actual tons. Rather, pursuant to the parties' contracts, each defendant was to buy its silage crop from VVF at a price per ton of adjusted weight—this adjusted weight representing

what the silage crop would weigh if it consisted of 34% dry matter and 66% moisture. [DE 39-1 at 6, ¶ 12]; (Pl.'s Compl. Ex. B and C). To calculate this measure, each defendant was to weigh its silage crop in tons, assess the crop's water content, and then adjust the measured weight up or down in accordance with the crop's water content, to approximate what the silage crop would weigh at the agreed-upon dry matter and moisture ratios. *Id.*

VVF agrees that the defendants properly weighed and assessed the water content of some of the silage crop harvested from its land in 2022. [DE 41 at 7-8, ¶ 10-12]. Instead, VVF alleges that after harvesting all of the silage present on its land, Bos and Herrema deliberately failed to weigh some portion of it—the alleged excess silage—on their scales, making the defendants' reported yields too low. [DE 41 at 7, ¶ 10]. This failure to weigh the entire silage crop, VVF claims, allowed Bos and Herrema to divert the excess silage to their own use without the agreed-upon payment. *Id.* From a review of the record, there is some evidence which suggests that VVF's land may have contained more corn than Bos and Herrema suggested in their reported yields.

First, before harvesting began, VVF requested that its insurer, Rural Community Insurance Company (RCIS), estimate the amount of corn growing on its land. (Corning Dep., pp. 23-25). An RCIS appraiser, Gary Corning, performed an assessment on the land allotted to Bos on either August 30 or 31, 2022, and an assessment on the land allotted to Herrema on September 6, 2022. (Corning Dep., pp. 25-28, 35). Corning's method involved taking sample corn stalks, weighing the stalks, and then using their average weight to estimate the amount of silage which each acre of land would produce. (Corning Dep., p. 26, 7-9; pp. 73-74). Corning took ten samples from the land allotted to Bos and fifteen samples from the land allotted to Herrema. (Corning Dep., pp. 71, 74). After weighing the sample corn stalks, Corning estimated

that the land allotted to Bos would produce about 26.7 tons of silage per acre and that the land allotted to Herrema would produce about 27.6 tons of silage per acre. (Corning Dep. Ex. 7 and 8).

Second, VVF's farmland has yielded far more corn silage than Bos and Herrema claim it did in 2022. In 2021, for example, RCIS estimated that the land allotted to Bos was likely to yield about 25.9 tons of silage per acre, and it estimated that the land allotted to Herrema was likely to yield about 25.7 tons of silage per acre. (Mercier Decl. Ex. 1).

Third, VVF's farmland is located in Jasper County, Indiana, and farms located in this area generally yielded more silage in 2022 than Bos and Herrema claim VVF's farmland did. According to data from the USDA National Agricultural Statistics Service, in 2022 the average Jasper County farm growing corn yielded about 22.4 tons of silage per acre of land. (Lauer Decl. Ex. 1, pp. 3-4).

And fourth, after the harvest, VVF hired Matt G. Lauer, an agronomy professor from the University of Wisconsin-Madison, to assess the amount of silage which had grown on its land during the 2022 season. By analyzing ears of corn harvested from VVF's land, and the number of kernels on these ears, Professor Lauer estimated that VVF's land yielded between 22.8 to 31.2 tons of silage per acre in 2022. (Lauer Decl. Ex. 1, pp. 4-5).

After harvesting ended for the 2022 season, the parties failed to agree on the amount of payment due under their contracts. VVF, insistent that the defendants' reported yields did not account for all of the silage which they harvested refused to accept payment based only on those reported yields. Bos and Herrema maintained that their reported yields accounted for all of the silage and refused to pay for any excess silage. VVF subsequently commenced this suit by filing a complaint on October 21, 2022. [DE 1]. VVF alleges that the defendants' failure to account for

4

all of their harvested silage violated Indiana state law, and it asserts claims for breach of contract, unjust enrichment, and criminal conversion under **Ind. Code § 35-43-4-3**.

### *Discussion*

Under **Federal Rule of Civil Procedure 56(a)**, summary judgment is proper only if the movant has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23 (1986); ***Gnutek v. Ill. Gaming Board***, 80 F.4th 820, 824 (7th Cir. 2023). To meet this standard, the movant must demonstrate that there is not sufficient evidence in the record on which a reasonable jury could find for the nonmoving party. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986); ***Trahanas v. Nw. Univ.***, 64 F.4th 842, 852 (7th Cir 2023). The court will grant summary judgment in such a case since holding a trial would be unnecessary, as a trial could only end with a result in the moving party's favor. *See* ***Bunn v. Khoury Enterprises, Inc.***, 753 F.3d 676, 682 (7th Cir. 2014) ("[W]here the factual record taken as a whole could *not* lead a rational trier of fact to find for the non-moving party, there is nothing for a jury to do.").

The party seeking summary judgment must always meet an initial burden of "informing the district court of the basis for its motion." ***Celotex Corp.***, 477 U.S. at 323; ***Hutchison v. Fitzgerald Equip. Co., Inc.***, 910 F.3d 1016, 1021 (7th Cir. 2018). When the movant seeks summary judgment on claims for which it will not bear the burden of proof at trial, it may discharge this initial burden by merely indicating that the nonmoving party lacks evidence to establish specific elements of those claims. ***Celotex Corp.***, 477 U.S. at 325; ***Modrowski v. Pigatto***, 712 F.3d 1166, 1168 (7th Cir. 2013). However, "[t]hat the moving party need not produce evidence does not give them an easy path to summary judgment, it only means that their burden is one of demonstration rather than production." ***Spierer v. Rossman***, 798 F.3d 502, 508

(7th Cir. 2015). When the movant fails to discharge their initial burden, the nonmoving party may survive a motion for summary judgment without providing a response. ***Gerhartz v. Richert***, 779 F.3d 682, 686 (7th Cir. 2015); *see also* ***Logan v. Com. Union Ins. Co.***, 96 F.3d 971, 979 (7th Cir. 1996) ("Only after the movant has articulated with references to the record and to the law specific reasons why it believes there is no genuine issue of material fact must the nonmovant present evidence sufficient to demonstrate an issue for trial.").

When the movant has discharged its initial burden, the burden shifts to the nonmoving party, who may survive summary judgment only by pointing to "specific facts showing that there *is* a genuine issue for trial." ***Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586-87 (1986) (quoting **Fed. R. Civ. P. 56(e)**) (emphasis altered). Conclusory allegations and allegations unsupported in the record are not sufficient to discharge this burden. ***Foster v. PNC Bank, Nat'l Ass'n***, 52 F.4th 315, 320 (7th Cir. 2022).  Rather, the nonmovant must point to specific evidence which could be admissible at trial, and which, if believed, would constitute sufficient grounds for a reasonable jury to rule in its favor.  ***Marr v. Bank of Am., N.A.***, 662 F.3d 963, 966 (7th Cir. 2011). In assessing the facts presented on a motion for summary judgment, the court will "consider all evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in favor of that party." ***Singmuongthong v. Bowen***, 77 F.4th 503, 510 (7th Cir. 2023); *see also* ***Tolan v. Cotton***, 572 U.S. 650, 651 (2014) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [its] favor.") (quoting ***Anderson***, 477 U.S. at 255).

Each of VVF's three claims is based on state substantive law, and in diversity actions federal courts apply state substantive law. ***Doermer v. Callen***, 847 F.3d 522, 529 (7th Cir. 2017); ***Erie R.R. Co. v. Tompkins***, 304 U.S. 64, 78 (1938). First, VVF alleges that Bos and Herrema

breached their respective contracts by failing to weigh and account for some portion of the corn which they harvested—the alleged excess silage. Second, plaintiff alleges that by diverting the excess silage to their own use without payment, Bos and Herrema rendered themselves subject to a claim for unjust enrichment. And third, plaintiff alleges that by diverting the excess silage without payment or consent, Bos and Herrema committed criminal conversion under **Ind. Code § 35-43-4-3**. The court will address plaintiff's first and third claims first.

### A. Plaintiff's Breach of Contract Claim

Under Indiana law, three elements must be established to support a breach of contract claim: "the existence of a contract, the defendant's breach of that contract, and damages resulting from the breach." **Haegert v. Univ. of Evansville**, 977 N.E.2d 924, 937 (Ind. 2012); *see also* **McCalment v. Eli Lilly & Co.**, 860 N.E.2d 884, 894 (Ind. Ct. App. 2007). Contract interpretation is considered "a pure question of law", which may be assessed by the courts, and if the terms of a contract "are clear and unambiguous, courts must give those terms their clear and ordinary meaning." **Dunn v. Meridian Mut. Ins. Co.**, 836 N.E.2d 249, 251 (Ind. 2005). A contract provision is considered ambiguous, by contrast, "when it is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning." **Berg v. Berg**, 170 N.E.3d 224, 231 (Ind. 2021) (quoting **Willey v. State**, 712 N.E.2d 434, 440 (Ind. 1999)).

Defendants present two arguments to assert that plaintiff cannot establish the breach element of its breach of contract claim. Their first argument is one of contract interpretation. The two contracts at issue, defendants point out, contain the following provision: "Seller agrees to weigh each load over Buyers scales, and this sale will be final." (Pl.'s Compl., Ex. B and C). The defendants focus on the words "this sale will be final. " Since the contracts stipulate that the

Seller, VVF, must agree to sell its silage crop at a weight determined on the Buyers' scales, the defendants argue that plaintiff is contractually barred from using outside evidence to contest the accuracy of their weight measurements, and thus the accuracy of their reported yields. A sale based on the defendants' weight measurements, defendants claim, is irrefutably final.

      This argument, however, is belied by the plain language of the same provision. In Indiana, courts are to assess a contract's meaning "by considering all of its provisions, not individual words, phrases, or paragraphs read alone." **Care Grp. Heart Hosp., LLC v. Sawyer**, 93 N.E.3d 745, 756 (Ind. 2018). While the provision cited does stipulate that plaintiff will agree to sell its silage crop using a weight determined on the defendants' scales, this promise comes after a condition precedent: before "this sale will be final", the contracts state that the parties will "weigh each load [of silage] over Buyers scales."  (Pl.'s Compl., Ex. B and C). In other words, before VVF must sell its silage crop at a price based on the defendants' measurements, the defendants must first weigh each load of this silage, meaning the entire silage crop, over their scales. If VVF alleged that defendants had weighed each load of harvested silage on their scales, but that this measurement was somehow faulty, the contract would indeed preclude VVF from challenging the defendants' reported yields. But here, since VVF alleges that defendants did not weigh some portion of the harvested silage on their scales, VVF is free to use outside evidence to challenge whether the defendants' reported yields accurately account for all of the harvested silage. VVF is thus not contractually barred from asserting that the defendants breached their contracts by failing to weigh the entire silage crop.

      The defendants' second argument is evidentiary. Specifically, the defendants assert that plaintiff lacks sufficient evidence to establish that they breached their contractual obligation to weigh the entire silage crop, or to show that any excess silage beyond their reported yields even

existed. According to the defendants, VVF does not have any evidence corroborating the alleged failure to weigh the entire silage crop—such as an affidavit from a witness to defendants' weighing process. The defendants also challenge the evidentiary value of the RCIS insurance appraisal. Because the appraisal was not based on enough sample corn stalks, among other asserted defects, the defendants claim that it cannot constitute sufficient evidence for a jury to find in plaintiff's favor.

In order to prevail at trial, VVF is not required to produce a witness who saw the defendants removing corn from the fields before it was weighed. This lack of direct evidence, however, is far from fatal. On a motion for summary judgment, the court is to "draw all reasonable inferences in favor of the non-moving party." **Melton v. Tippecanoe Cty.**, 838 F.3d 814, 818 (7th Cir. 2016); *see also* **Abdullahi v. City of Madison**, 423 F.3d 763, 772 (7th Cir. 2005) (finding a reasonable inference where the "the fact finder [would be asked] to infer causation, logically, from undisputed facts and competent evidence.") (emphasis removed). VVF's lack of direct evidence of the defendants' alleged underreporting, therefore, does not preclude it from establishing that they breached their contracts.

VVF has presented sufficient evidence on which a jury could find that its land contained more corn than the defendants reported. Even assuming that defendants' challenges to the 2022 RCIS insurance appraisal could eliminate its evidentiary value, this appraisal is not the only evidence that VVF relies on. First, RCIS also estimated that VVF's land yielded significantly more silage in 2021 than the defendants claim this land yielded in 2022. (Mercier Decl. Ex. 1). Second, the average farm in Jasper County yielded significantly more silage in 2022 than the defendants claim VVF's land did during that same year. (Lauer Decl. Ex. 1, pp. 3-4).  And third, based on an analysis of the ears of corn grown on VVF's land, Professor Lauer testified that this

9

land yielded significantly more silage in 2022 than defendant's claim. (Lauer Decl. Ex. 1, pp. 4-5).

Some of this evidence does not appear to account for the parties' agreement to sell the 2022 silage crop at an adjusted weight—based on what the crop would weigh if it were 34% dry matter and 66% moisture—and a jury would need to take this into consideration in assessing how much silage VVF's land yielded in 2022. That said, from a review of this evidence, a reasonable jury still could find it more likely than not that VVF's land yielded some amount of excess silage beyond the amounts the defendants reported. As a result, a reasonable jury could also find that the defendants breached their contracts with VVF by failing to weigh and pay for some portion of the silage which they harvested from VVF's land, and the defendants' motion for summary judgment on plaintiff's breach of contract claim must therefore be **DENIED**.

### B. Plaintiff's Criminal Conversion Claim

Under Indiana law, criminal conversion occurs when a person "knowingly or intentionally exerts unauthorized control over property of another person." **Ind. Code § 35-43-4-3**; *Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 814 (Ind. 2009). Conduct is done "knowingly" if an actor "is aware of a high probability that he is doing" such conduct. **Ind. Code § 35-41-2-2(b);** *French-Tex Cleaners, Inc. v. Cafaro Co.*, 893 N.E.2d 1156, 1166 (Ind. Ct. App. 2008). Conduct is done "intentionally" if the actor performs this conduct with the "conscious objective to do so." **Ind. Code § 35-41-2-2(a);** *French-Tex Cleaners* 893 N.E.2d at 1166. Control over property is considered "unauthorized" when "it is exerted in a manner or to an extent other than that to which the other person has consented." *French-Tex Cleaners*, 893 N.E.2d at 1166 (citing **Ind. Code § 35-43-4-1(b)(2)**). If any party suffers monetary loss due to criminal conversion, that party may file a civil suit to recover its loss. *CT102 LLC v. Auto. Fin.*

*Corp.*, 175 N.E. 869, 873 (Ind. Ct. App. 2021). To recover, such a party "need prove by only a preponderance of the evidence that the defendant committed the criminal act." *Jet Credit Union v. Loudermilk*, 879 N.E.2d 594, 597 (Ind. Ct. App. 2008).

Although the defendants have moved for summary judgment on VVF's criminal conversion claim, they have offered no specific argument in support of their motion. This alone is sufficient grounds for denying summary judgment. *Gerhartz*, 779 F.3d at 686; *see also* *Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 914-15 (7th Cir. 2022) ("a party opposing a motion for summary judgment needs to respond only to arguments the moving party actually made, not others that the moving party might have made but did not."). "It is not the obligation of th[e] court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Riley v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018) (quoting *Beard v. Whitley Cty. REMC*, 840 F.2d 404, 408-09 (7th Cir. 1988)).

Moreover, from an independent review of Indiana law, the court sees no reason why VVF's criminal conversion claim should not be allowed to proceed. As stated above, VVF has presented sufficient evidence on which a reasonable jury could find that its alleged excess silage existed. VVF has also presented sufficient evidence to demonstrate that defendants exerted unauthorized control over this excess silage. Although the defendants were contractually directed to harvest and take possession of VVF's silage, the defendants' possession of this silage still may be considered unauthorized if they took control of it fraudulently, with no intent to honor their payment obligations. *See, e.g.*, *Stephens v. Tabscott*, 159 N.E.3d 634, 641 (Ind. Ct. App. 2020) (finding unauthorized control of property deed when defendant obtained deed by promising $16,000 payment, but defendant had no intention of making this payment). And VVF has presented sufficient evidence to demonstrate that the defendants knew they were exerting

unauthorized control over the excess silage, or that the defendants intended to do the same. It is true that, in enacting its criminal conversion statute, "the Indiana legislature did not intend to criminalize bona fide contract disputes", and so the courts will not find the requisite intent for this crime when a defendant "acted in accordance with a reasonable interpretation of [an] ambiguous contract." ***French-Tex Cleaners***, 893 N.E.2d at 1168. Here, however, the contracts at issue unambiguously require that the defendants pay for all of the silage which they harvested from VVF.  If a jury finds that defendants retained any excess silage without payment and that the defendants submitted fraudulently low reported yields, the jury may also find that the defendants knew their retention of this silage was unauthorized, or intended it be so. The defendants' motion for summary judgment on VVF's criminal conversion claim must therefore be **DENIED**.

### C.  Plaintiff's Unjust Enrichment Claim

Under Indiana law, a claim of unjust enrichment has three elements: "a plaintiff must generally show that he rendered a benefit to the defendant at the defendant's express or implied request, that the plaintiff expected payment from the defendant, and that allowing the defendant to retain the benefit without restitution would be unjust." ***Reed v. Reid***, 980 N.E.2d 277, 296 (Ind. 2012). Unjust enrichment is treated by the Indiana courts as "a legal fiction", through which a plaintiff may recover the value of benefits conferred on a defendant in a situation "where, in fact, there is no contract, but where the circumstances are such that under the law of natural and immutable justice there should be a recovery as though there had been a promise." ***Bayh v. Sonnenburg***, 573 N.E.2d 398, 408 (Ind. 1991) (quoting ***Clark v. Peoples Sav. & Loan Ass'n***, 46 N.E.2d 681, 682 (Ind. 1943)).

Although the defendants have moved for summary judgment on VVF's unjust enrichment claim, they have offered no argument in support of their motion other than a general assertion that VVF lacks the necessary evidence to support its claim. This is sufficient grounds for denying summary judgment. **Gerhartz**, 779 F.3d at 686; *see also* **Sublett v. John Wiley & Sons, Inc.**, 463 F.3d 731, 736 (7th Cir. 2006) ("As a general matter, if the moving party does not raise an issue in support of its motion for summary judgment, the nonmoving party is not required to present evidence on that point."). The Seventh Circuit has repeatedly "made clear that perfunctory and underdeveloped arguments, and arguments that are unsupported by pertinent authority are waived." **Greenbank v. Great Am. Assurance Co.**, 47 F.4th 618, 629 (7th Cir. 2022); *see also* **United States v. Useni**, 516 F.3d 634, 658 (7th Cir. 2008). Defendants' motion for summary judgment on plaintiff's unjust enrichment claim, accordingly, is **DENIED**.

That said, from an independent review of Indiana law, there appears to be an issue with allowing VVF's unjust enrichment claim to proceed. Indiana courts treat unjust enrichment as an equitable alternative to a traditional breach of contract claim, the former, unlike the latter, being a remedy which will "permit recovery where no express contract . . . exists." **Fiederlein v. Boutselis**, 952 N.E.2d 847, 857 (Ind. Ct. App 2011); *see also* **Luse Thermal Tech., LLC v. Graycor Indus. Constructors, Inc.**, 221 N.E.3d 701, 718 (Ind. Ct. App. 2023) ("Essentially, unjust enrichment is the remedy for breach of a constructive contract, implied in law."). Therefore, in most cases under Indiana law, "[t]he existence of an express contract precludes a claim for unjust enrichment." **Butler Motors, Inc. v. Benosky**, 181 N.E.3d 304, 324 (Ind. Ct. App. 2021) (quoting **Kohl's Indiana, L.P. v. Owens**, 979 N.E.2d 159, 168 (Ind. Ct. App. 2012). This limit on unjust enrichment claims allows the Indiana courts to avoid altering the terms of a

relationship which the parties themselves defined by contract. ***Zoeller v. E. Chicago Second Century, Inc.***, 904 N.E.2d 213, 221 (Ind. 2009).

There are, however, exceptions to this rule. For instance, a plaintiff may proceed on an unjust enrichment claim, despite its having a contract with a defendant, when this "contract arguably cover[s] a different subject matter." ***Luse Thermal***, 221 N.E.3d at 718 (quoting ***City of Indianapolis v. Twin Lakes Enters., Inc.***, 568 N.E.2d 1073, 1078 (Ind. Ct. App. 1991)). Under the same circumstances, a plaintiff also may proceed on an unjust enrichment claim when the parties' contract "does not fully address a subject." ***In re Trust of Rawlings***, 113 N.E.3d 675, 683 (Ind. Ct. App. 2018) (quoting ***Coppolillo v. Cort***, 947 N.E.2d 994, 998 (Ind. Ct. App. 2011)). However, neither exception appears to apply. The contracts between the parties unambiguously committed the defendants to harvesting and paying for all of the silage present on their allotted portions of VVF's land. VVF, in its unjust enrichment claim, only seeks to recover losses associated with the defendants' failure to pay for some of the silage subject to these contracts. The parties' contracts, therefore, seem to cover the same subject matter as plaintiff's unjust enrichment claim. Moreover, to the extent that the parties have not yet agreed on a price for this silage, the price may presumably be set as a reasonable price in accordance with Indiana law, without the need to resort to an unjust enrichment claim. *See* **Ind. Code § 26-1-2-305**.

Under **Federal Rule of Civil Procedure 56(f)**, the court may grant summary judgment *sua sponte*, on a basis not raised by the parties, "after providing notice and a reasonable opportunity to respond." ***Lynch v. Ne. Reg'l Commuter R.R. Co.***, 700 F.3d 906, 911 (7th Cir. 2012). The court hereby gives VVF such notice to explain why it believes summary judgment should not be granted on its claim for unjust enrichment.

14

*Conclusion*

For the foregoing reasons, the defendants' Motion for Summary Judgment [DE 39] is **DENIED**. VVF has until **July 29, 2024,** to file a notice explaining why it believes summary judgment should not be granted on its claim for unjust enrichment.

ENTERED this 15th day of July, 2024.

/s/ Andrew P. Rodovich
United States Magistrate Judge